UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JACK T. GREGORY,

      Plaintiff,

v.                                     Case No: 8:16-cv-1471-T-36AEP

COMMISSIONER OF SOCIAL
SECURITY,[1]

      Defendant.
_____/

## **O R D E R**

This cause comes before the Court on Plaintiff Jack T. Gregory's ("Gregory") Complaint for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for benefits. Doc. 1. Magistrate Judge Anthony Porcelli submitted a Report and Recommendation ("R&R"), recommending that the Court affirm the Commissioner's decision. Doc. 31. Gregory filed Objections to the R&R (Doc. 34). After an independent *de novo* review of the record, including all of Gregory's objections to the R&R ("Objections"), the Report and Recommendation will be adopted, confirmed, and approved in all respects, and the decision of the Commissioner will be affirmed.

## I.     **BACKGROUND**[2]

###     A.    **Procedural Background**

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The procedural and factual background are adopted from the Magistrate Judge's R&R.

Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") in 2009 (Tr. 114-20). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 63-64, 67-84). Plaintiff then requested an administrative hearing (Tr. 112-13). Per Plaintiff's request, the Administrative Law Judge ("ALJ") held a hearing at which Plaintiff appeared and testified (Tr. 34-62). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled as of October 1, 2008, through the date of the decision, December 22, 2010, and accordingly denied Plaintiff's claims for benefits (Tr. 16-33). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-5, 110-11).

Plaintiff then appealed the Commissioner's decision to the United States District Court for the District of Kansas (Tr. 763-83). Upon consideration, the District of Kansas reversed and remanded the decision pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings. Specifically, the case was remanded for the Commissioner to re-evaluate the opinions of Dr. Robert Nottingham, to either include all limitations in a mental residual functional capacity ("RFC") assessment in the RFC findings or to provide a legally sufficient explanation for not including the limitations in the RFC findings, and to reconsider Plaintiff's daily activities (Tr. 773-75, 779-80, 783).

Upon remand from the District of Kansas, the Appeals Council vacated the final decision of the Commissioner and remanded the case to an ALJ (Tr. 784-87). In doing so, the Appeals Council noted that Plaintiff filed subsequent applications for a period of disability, DIB, and supplemental security income ("SSI") on December 27, 2012, so the Appeals Council ordered the ALJ to associate the subsequent claims file with the current claim file and consider the evidence in both claims (Tr. 786). The Appeals Council further directed the ALJ to offer Plaintiff an

opportunity for a hearing, to take any further action needed to complete the administrative record, and to issue a new decision (Tr. 786).

Plaintiff's new applications for a period of disability, DIB, and SSI were denied administratively and consolidated with the remanded claim (Tr. 687-762, 790-802, 805-16, 878-90). Plaintiff then requested an administrative hearing before the ALJ (Tr. 817-18). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 553- 656). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled from October 1, 2008, through the date of the decision, December 11, 2014, and accordingly denying benefits to Plaintiff (Tr. 518-51). Subsequently, Plaintiff submitted to the Appeals Council exceptions to the ALJ's decision, but the Appeals Council denied review (Tr. 441-517). Plaintiff then timely filed a complaint with this Court (Doc. 1). Following the filing of the parties' Joint Memorandum (Doc. 26) detailing their positions, the Court conducted a hearing, at which the parties each presented oral argument as to their respective positions.

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1960, claimed disability beginning October 1, 2008 (Tr. 114, 878, 884). Plaintiff has a high school education (Tr. 139, 562, 903). Plaintiff's past relevant work experience included work as a generator assembler, forklift operator, and cemetery caretaker (Tr. 134, 541, 585, 904). Plaintiff alleged disability due to Asperger's Syndrome, depression, anxiety, post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADHD"), attention deficit disorder ("ADD"), obesity, degenerative disc disease, lower back pain, pinched nerve in left elbow, panic disorder, mood disorder, numbness and tingling in left hand, severe left cubital tunnel syndrome, dizziness, shortness of breath, weakness, fatigue, lack of focus and

concentration, nightmares, flashbacks, anger spells, visual hallucinations, fibromyalgia, and disc bulges at C3-4, C4-5, C5-6, and L4-5 (Tr. 133, 902).

In rendering its decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2013, and had not engaged in substantial gainful activity since October 1, 2008, the alleged onset date (Tr. 524). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: mild degenerative changes and bulging of the cervical and lumbar spines; moderate degenerative narrowing in the right knee; degenerative joint disease in the left knee, with tearing of the posterior horn of the medial meniscus; osteoarthritis; fibromyalgia; obesity; ADHD; anxiety disorders variously diagnosed as panic and post-traumatic stress disorders, personality disorders variously diagnosed as impulse control and anti-social personality disorders; chronic pain syndrome; and a history of alcohol abuse (Tr. 524). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 532).

The ALJ then concluded that Plaintiff retained a RFC to perform light work, except that Plaintiff required the freedom to shift positions every 30 minutes, for a duration of one to two minutes (while still performing tasks while shifting positions); could only occasionally climb ladders, ropes, scaffolds, ramps, and stairs; could only occasionally stoop, kneel, crouch, and crawl; could never balance on slippery, uneven, or moving surfaces; must avoid concentrated exposure to hazards, such as moving mechanical parts of equipment, tools, or machinery; must avoid concentrated exposure to open, unprotected heights; could understand, carry out, and remember simple tasks with minimal changes in the work setting; could not perform work that involved an assembly-line pace; and could only occasionally interact with the general public and

supervisors (Tr. 533-34). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely credible (Tr. 536).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform his past relevant work as a generator assembler, forklift operator, and cemetery caretaker (Tr. 541). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a bagger, marker, final inspector, and burr grinder (Tr. 542). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 543).

## II.     LEGAL STANDARDS

### A.       Review of a Report and Recommendation

Federal Rule of Civil Procedure 72(b)(2), in pertinent part, provides that "a party may serve and file specific written objections to the proposed findings and recommendations" of a magistrate judge.  The district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1); *Jeffrey S. v. State Bd. of Educ. of State of Georgia*, 896 F.2d 507, 512 (11th Cir. 1990). The district judge may accept, reject, or modify, in whole or in part, the Report and Recommendation.  Fed. R. Civ. P. 72(b)(3).  The district judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions.  *Id*.

## B.  Review of the Commissioner's Decision

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and is based upon proper legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.* (internal quotation marks omitted).  Where the Commissioner's decision is supported by substantial evidence, the Court must affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  42 U.S.C. § 405(g); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) ("If the Commissioner's decision is supported by substantial evidence, we must affirm, even if the proof preponderates against it.").  The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its own] judgment for that of the [Commissioner]." *Id.*

## C.  An ALJ's Five-Step Disability Analysis

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.  *See* 20 C.F.R. § 416.920(a)(4).  The Eleventh Circuit has explained this process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience.  If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work.  At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The plaintiff has the burden of proof on the first four steps; the Commissioner carries the burden on the fifth step. *Wright v. Comm'r of Soc. Sec.*, 327 F. App'x 135, 136-37 (11th Cir. 2009). If it is determined at any step in the analysis that the claimant is disabled or not disabled, the evaluation does not proceed. *See* 20 C.F.R. § 416.920(a)(4).

## II.    DISCUSSION

### A.    Lay opinion

Plaintiff's objection asserts that the ALJ impermissibly imposed her own lay opinion and cherry picked the evidence to support her decision to discredit him and his claim at each step of the sequential analysis. First, Plaintiff argues that it was improper for the ALJ to "cherry-pick" statements from a March 1976 document (Tr. 407-08), concluding plaintiff should be placed "in the Educable Mentally Retarded Level IV Classroom" when he begins high school, to *discredit* him, his witnesses, and the findings and opinions of his numerous treating and examining medical providers. Second, Plaintiff argues that the ALJ improperly relied on this same evidence to reject the findings and opinions of his treating and examining providers, reasoning that the "manipulative tendencies" noted by non-medical professionals in this 30+-year old report, *ipso facto*, renders any statements made by this claimant to his medical providers on and after 2008 unreliable, along with any findings, observations, and diagnoses from these providers.

Plaintiff's contentions are without merit. It is well-established that the ALJ has a basic duty to develop a full and fair record. *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)) (stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application."); *Dicks v. Colvin*, No. 3:15-cv-934-J-MCR, 2016 WL 4927637,

at *4 (M.D. Fla. Sept. 16, 2016) (citation omitted) (stating that an "ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.")). Here, Plaintiff's objection is belied by the record because the ALJ did not improperly "cherry-pick" statements from a March 1976 document and/or substitute her lay opinion for that of the medical and vocational experts to support her conclusions. In fact, the ALJ mentioned the 1976 documents twice in her well written and thorough decision. The first time, in regard to a general summary of the medical evidence, the ALJ noted school records from 1976 and promptly noted these records were not "acceptable medical sources" and provided no foundation for a finding of medically determinable impairment. Tr. 525. The second time, in regard to Plaintiff's alleged cognitive/learning disorder, the ALJ mentioned the 1976 records once again but only to note that other than those records, the medical evidence was devoid of cognitive/learning disorder medical evidence. (Tr. 532).

The Court agrees with the Magistrate Judge that the ALJ appropriately considered all of the evidence at each step of the sequential analysis, including Plaintiff's inconsistent statements regarding his position as a caretaker and executor and the statements and findings regarding Plaintiff's manipulation, faked symptoms, disproportionate subjective complaints, ability to perform daily activities, and malingering (*see, e.g.,* Tr. 287, 289, 291, 294, 339, 386, 389, 405, 407-08, 421, 423, 425, 700-01, 732-34, 977-78, & 1197). As such, these objections are overruled.

Next, Plaintiff objects to the cited evidence by the Magistrate Judge at Tr. 287, 289, 291, 294, 386, 421, 423 and 425 to dispute that Plaintiff was "Ms. Ward's caregiver in February 2009 and that "by February 2010, the two cared for each other." In addition, Plaintiff submits that the relevant time period at issue is October 2008 through December 2014 and if he is unable to perform substantial gainful activity ("SGA") for any 12-month period, he is entitled to disability benefits.

*Id.* Plaintiff further submits that he did not provide care for Ms. Ward after her demise in 2012. *Id.* In essence, Plaintiff objects to being denied benefits because he did not "abandon an ill companion/friend to be found disabled." *Id.*

Here, as the Magistrate Judge correctly found, the ALJ did not err by considering such statements and findings and by utilizing those statements and findings at each step of the sequential analysis. *See* 20 C.F.R. §§ 404.1512(a), 404.1520(a)(3) & (4), 416.912(a), 416.920(a)(3) & (4). Indeed, in addition to the objective evidence of record, the Commissioner must consider all of the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929. Furthermore, to determine a claimant's RFC, an ALJ makes an assessment based on the evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with *all* of the other evidence of record. *See* 20 C.F.R. §§ 404.1520, 404.1545(a) & (e), 416.920, 416.945(a) & (e). As the Magistrate Judge noted, even though Plaintiff takes issue with the ALJ's reference to evidence that Plaintiff was a caregiver and executor, the record in fact reflects such statements and findings made by medical professionals and other individuals. Thus, Plaintiff's objection is overruled.

Plaintiff next contends that it was improper for the ALJ to rely on the same evidence to support all of her findings and that every finding made by the ALJ was premised on her improper determination that Plaintiff cannot be accorded any credibility. This objection is also without merit. First, as noted, the ALJ must develop the record and explicitly explain the reasons for her findings. As such, the use of the record evidence to support her findings was not only appropriate,

but is required. Second, in addition to the objective evidence of record, the Commissioner must consider all of the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929. In social security disability cases, credibility determinations fall within the province of the ALJ and will not be overturned unless they are not supported by substantial evidence. *Ybarra v. Comm'r of Soc. Sec.,* 658 F. App'x 538, 540 (11th Cir. 2016) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (*per curiam*); *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Draughon v. Comm'r, Soc. Sec. Admin.,* No. 16-17192, 2017 WL 3446883, at *3 (11th Cir. Aug. 11, 2017) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)); *see* 20 C.F.R. §§ 404.1529, 416.929. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *Foote v. Chater,* 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote,* 67 F.3d at 1562 (citation omitted); *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d at 782.

As the Magistrate Judge correctly noted, the ALJ thoroughly discussed Plaintiff's subjective complaints and the basis for finding Plaintiff's subjective complaints not entirely credible (Tr. 536-39). In addition, in finding Plaintiff's subjective complaints not entirely credible, the ALJ also highlighted the lack of mental health treatment for the years 2011, 2012, and 2014;

the lack of objective findings or observations by medical providers supporting Plaintiff's subjective complaints; and Plaintiff's statements regarding his daily activities (Tr. 536-39). *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

Plaintiff also takes issue with the fact that he has never been diagnosed as a malingerer[3] and that the ALJ's assertions to the contrary are not supported by the record. This contention is also without merit. As the Magistrate noted, the ALJ discussed the various records which contain several examples of Plaintiff's inconsistent statements regarding his position as a caretaker and executor and the statements and findings regarding Plaintiff's manipulation, faked symptoms, disproportionate subjective complaints, partial credibility, and malingering (*see, e.g.,* Tr. 287, 289, 291, 294, 339, 386(Dr. Skirchak added malingering to diagnosis), 389, 405 (Dr. Parsons noted the reports of malingering now added to the diagnoses but otherwise noted that there was no evidence of a worsening condition), 407-08, 421, 423, 425, 700-01, 732-34, 977, 978). Simply put, this contention also lacks merit.[4]

B.      Step Two

Plaintiff contends that the ALJ failed to include plaintiff's cognitive and upper extremities impairments in the hypothetical she posed to the VE and, as such, the ALJ's failure to recognize these impairments as severe at Step Two was not harmless error. Plaintiff's contention is without merit. Again, the Court agrees with the Magistrate Judge that the finding of *any* severe impairment, whether or not it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy Step Two. *Jamison v. Bowen*, 814 F.2d at 585, 588

---

[3]A malingerer is one who pretends or exaggerates incapacity or illness (as to avoid duty or work). *Merriam-Webster Dictionary* (11th ed. 2016).

[4] Plaintiff mentions other cases where Magistrate Judge Porcelli ruled differently than he has in the instant case, implying that he has made an error. This contention is without merit. It is axiomatic that each case must be analyzed and decided on the facts and evidence in the record.

(11th Cir. 1987); *see Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) (*per curiam*) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (*per curiam*) (noting that an ALJ's failure to identify an impairment as severe, where the ALJ found that the plaintiff suffered from at least one severe impairment, constituted harmless error and was, in fact, sufficient to meet the requirements of step two, and additionally noting that nothing requires the ALJ to identify, at step two, all of the impairments that could be considered severe); *see also Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951-52 (11th Cir. 2014); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 857 (11th Cir. 2013).

In addition, when the ALJ utilizes the testimony of a VE, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments for a VE's testimony to constitute substantial evidence. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (citation omitted). But when the ALJ properly rejects purported impairments or limitations, the ALJ need not include those findings in the hypothetical posed to the VE. *Crawford*, 363 F.3d at 1161. Here, the ALJ did not have an obligation to pose either a cognitive and/or upper extremities impairment in the hypothetical she posed to the VE because, as the record reflects, neither impairment was severe.

For instance, in regard to Plaintiff's upper extremity impairment, the ALJ thoroughly considered the impairment and found no functional limitations resulting from such impairment (Tr. 530-31). As the ALJ noted, the evidence indicated Plaintiff suffered from a Dupuytren's contracture in the left hand and left cubital tunnel syndrome (Tr. 530). As the ALJ further noted, Plaintiff underwent surgical release of the left cubital tunnel in early 2009, soon after his alleged

disability onset date (Tr. 282-83, 530). After that time, the record demonstrates little, if any, functional deficit in Plaintiff's left upper extremity (Tr. 531). Indeed, Plaintiff's ability to hold a cane in his left hand, fish, and lift, while caring for his terminally ill friend suggest he had the ability to hold and grasp items (Tr. 531, 1034, 1213). Although Plaintiff sporadically asserted various complaints regarding pain and numbness in his upper extremities thereafter, the record indicates that Plaintiff experienced little, if any, functional limitations as a result, as the ALJ stated in the decision. (See Tr. 413-14; 420; 530-31; 1,017; 1,035; 1,037; 1,040; 1,200; 1,209; 1,211; 1,217; 1,265). And the ALJ found Plaintiff's reports of his subjective symptoms less than credible (Tr. 536).

Also, the ALJ's decision reflects that she thoroughly considered and discussed the evidence related to Plaintiff's mental impairments when assessing his RFC (Tr. 536-37). The ALJ noted the lack of mental health treatment for the years 2011, 2012, and 2014. (Tr. 536-39). Also, the ALJ noted Plaintiff's treatment history but merely as part of the evidence undermining Plaintiff's allegations of disabling limitations (Tr. 536-37). As such, substantial evidence supports the ALJ's finding that the Plaintiff failed to meet his burden of proving that he had additional limitations due to mental impairments. The Court agrees with the Magistrate Judge that any error was harmless. However, the record also reflects that Plaintiff failed to meet his burden, at this step, to show the other impairments were severe. In sum, since the ALJ's findings are supported by substantial evidence and she applied the correct legal standard, this objection is overruled.

C.    Step Three

        1.    Listing 1.02

Next, Plaintiff submits that the ALJ erred when she found that he did not meet the requirements of Listing 1.02A (inability to ambulate) and that she should have included both

plaintiff's need to utilize a cane and difficulty with ambulation in the hypothetical she propounded to the VE. These contentions are without merit. Indeed, the record supports the ALJ's finding in regard to Plaintiff's left knee impairment not meeting or equaling a Listing because Plaintiff repeatedly exhibited normal gait, no problems with ambulation, and normal or minimal findings upon examination (Tr. 524-33). The ALJ's finding in this regard was proper. For example, the record reveals that, in October 2008, Plaintiff reported some numbness in his feet that was most likely related to his medication, rather than radicular problems, but he also demonstrated excellent strength in his lower extremities and no difference in sensation between the left and right side (Tr. 357). In January 2009, Plaintiff arrived to the Olathe Medical Center Emergency Room walking and, upon examination, exhibited a normal range of motion in all extremities, no swelling in the legs, distal point sensation intact for all extremities, and motor strength normal for all extremities (Tr. 231-33). It was also noted that Plaintiff experienced relief from discomfort in his chest when he walked around and exerted himself (Tr. 232). In July 2009, Plaintiff complained to Dr. Robert W. Nottingham of back pain radiating down his legs but stated that he experienced no weakness, numbness, or tingling in his lower extremities (Tr. 347). During that appointment, Plaintiff also experienced a normal physical except for the low back pain (Tr. 347). In November 2009, Plaintiff reported multiple joint and muscle aches and pains, but physical examination results were entirely unremarkable (Tr. 413).

In February 2010, however, Dr. Nottingham prescribed Plaintiff a single-point cane (Tr. 415). In April 2010, Plaintiff treated with Dr. Danielle Skirchak, a psychiatrist, who noted that Plaintiff ambulated with a stick (Tr. 423-24). In May 2010, Dr. Nottingham noted that Plaintiff complained about swelling in his left knee, but Dr. Nottingham noted that the knee did not look bad, and Plaintiff had great range of motion and color in the knee, normal sensation, minimal

swelling, and intact ligaments and tendons (Tr. 420). Following that, in June 2010, Plaintiff reported to Dr. David Steinbronn with bilateral knee pain (Tr. 429). Upon examination of the left knee, Dr. Steinbronn noted that a small effusion was present and Plaintiff demonstrated some mild pain on palpation of the medial femoral condyle but that Plaintiff exhibited quite minimal pain to palpation of the joint lines, normal range of motion, intact sensation to light touch, brisk capillary refill distally, 5/5 strength distally, negative Lachman's test, no instability to varus or valgus stress, normal patellar mobility, and minimal patellofemoral crepitus (Tr. 429). Examination of the right knee revealed identical results, except that Plaintiff demonstrated no effusion and no pain on palpation of the medial femoral condyle (Tr. 429). Dr. Steinbronn also noted that X-rays of the knees showed only minimal degenerative changes (Tr. 429). In December 2010, Dr. Stephen Ruhlman observed that Plaintiff walked with an antalgic gait using a cane heavily (Tr. 433).

In February 2011, Dr. Nottingham noted that Plaintiff used a cane but did not mention an inability to ambulate effectively (Tr. 989). In April 2011, Plaintiff reported to Arthritis Specialists of Greater Kansas City and described a lot of pain in his right knee, but notes indicated that there was no sign of arthritis yet failed to identify any difficulty ambulating (Tr. 1,039). In June 2011, Plaintiff reported back to Arthritis Specialists of Greater Kansas City with some inflammation and pain in his left knee but no difficulties ambulating (Tr. 1,038). In October 2011, Plaintiff returned to Dr. Nottingham complaining of dizziness, mild nausea, and back pain (Tr. 979). After the physical examination, Dr. Nottingham noted that, although Plaintiff walked with a cane and complained of low back pain, Plaintiff exhibited normal strength, no swelling, and no deformity with respect to his musculoskeletal system (Tr. 979). No other mobility or ambulation issues were noted, and Plaintiff expressed no complaints with respect to his knee (Tr. 979).

In January 2012, Plaintiff reported knee pain and recurrent falling (Tr. 1,011), but he also stated that he could perform most of what he needed to do to care for himself at home (Tr. 1,013). In April 2012, Plaintiff reported left knee pain with some swelling but was not diagnosed with a knee impairment (Tr. 1,035). In August 2012, Plaintiff complained of knee pain during another appointment at Arthritis Specialists of Greater Kansas City, and X-rays were ordered (Tr. 1,034).

In January 2013, Plaintiff treated with Dr. LaTaura Atwell-Small at Suncoast Medical Clinic, after which Dr. Atwell-Small noted that Plaintiff complained of chronic knee pain and ambulated with a cane, but Dr. Atwell-Small did not report that Plaintiff experienced any difficulties with ambulation (Tr. 1,014-18). Also in January 2013, Plaintiff met with Dr. Julio Gonzalez complaining of bilateral knee pain and exhibiting joint swelling but no leg swelling (Tr. 1,185). Dr. Gonzalez examined Plaintiff and noted that Plaintiff demonstrated an abnormal gait from the pain in his back but had no synovitis and full range of motion in all of his joints (Tr. 1,187). In February 2013, Plaintiff complained to Dr. Danya Godoy of knee pain and balance problems (Tr. 1,000-03). After examination, Dr. Godoy noted that Plaintiff had back pain, limb pain, and joint pain and stiffness but did not note any difficulties with ambulation or mobility (Tr. 1,008). X-rays of the right and left knee taken in March 2013 indicated only moderate degenerative narrowing in the medial and patellofemoral compartments of the knees but were otherwise unremarkable (Tr. 1,045; 1,051; 1,055; 1,057).

Treatment notes from Dr. Leslie Kidd, in March 2013, indicate that, though Plaintiff demonstrated tenderness over the right lateral ligaments of his knees, he demonstrated full range of motion of the knees and no clubbing, cyanosis, or edema (Tr. 1,049). In April 2013, Plaintiff met with Dr. Linda Appenfeldt, a licensed psychologist, for a general clinical evaluation

with mental status (Tr. 1,029-32). After evaluating Plaintiff, Dr. Appenfeldt opined that Plaintiff maintained the ability to sit, stand, walk, handle objects, hear and speak, operate a motor vehicle, and feed, bathe, dress, and groom himself (Tr. 1,032). Notably, Dr. Appenfeldt did not report any ambulation or mobility issues. Also in April 2013, however, Plaintiff reported to Dr. Kidd that he had pain in his left knee that hurt about every five steps, walked with a limping gait, and experienced a decreased range of motion in the left knee with pain and pain with ambulation (Tr. 1,044). Plaintiff was referred for a MRI of the left knee and prescribed Naproxen for the pain (Tr. 1,044-45). In May 2013, treatment notes from Pinellas County Health Department indicate that Plaintiff's MRI of the left knee indicated articular surface tear at the posterior horn of the medial meniscus, moderate joint effusion, and osteoarthritic changes with findings suggesting osteochondral defect with loss of overlying cartilage involving the medial femoral condyle (Tr. 1,132-33). In June 2013, treatment notes from the Health Department indicate that Plaintiff walked with a marked limp, put light weight on the left leg, and had a varus issue with the left knee (Tr. 1,148).

In August 2013, Plaintiff complained of left knee pain and received an injection in the knee, but the pain was slightly worse and not improved, and he presented with an antalgic gait without a cane and decreased range of motion of the left knee with pain and pain with ambulation (Tr. 1,131). In September 2013, Plaintiff met with Dr. Robert Wallace regarding clearance for a partial knee replacement but noted that he wanted to hold off until a CT scan of his lungs could be conducted (Tr. 1,128). According to Dr. Wallace, Plaintiff walked with a limp favoring the left knee (Tr. 1,128). Also in September 2013, Dr. Marshall Herbert noted that Plaintiff received an injection for left knee pain, which did not work well, and that Plaintiff experienced medial pain and tenderness and ambulated slowly with varus deformity (Tr. 1,130). Dr. Herbert also noted

that X-rays showed a complete loss of medial cartilage space when standing and mild loss when not, spurs medially, and lateral space and patellofemoral space indicating left knee medial compartment osteoarthritis (Tr. 1,130). As a result, Dr. Herbert arranged for a medial compartment replacement surgery (Tr. 1,130), but the record does not indicate that such surgery ever occurred.

In February 2014, Plaintiff met with Dr. Jones, a psychiatrist, for an evaluation and reported that he drove to the interview that day, had no motor vehicle accidents, and drives very slowly and very carefully (Tr. 1,153). Plaintiff reported back to Dr. Gonzalez in April 2014 complaining of fibromyalgia but also worsening pain in his left knee (Tr. 1,189). Plaintiff exhibited leg swelling and abnormal gait from his back pain but no synovitis and a full range of motion in all of his joints (Tr. 1,191). In June 2014, Plaintiff reported to St. Anthony's Hospital complaining of weakness in his left arm (Tr. 1,197). Records indicate that Plaintiff demonstrated no fatigue, no back pain, no muscle pain, no tenderness, and a normal range of motion during his musculoskeletal examination (Tr. 1,197-98).

As the above records reveal, the ALJ's finding that Plaintiff's knee impairment did not meet or equal the requirements of Listing 1.02A was supported by the record evidence. And as the Magistrate Judge correctly noted, although Plaintiff reported knee pain frequently, the majority of the treatment records omitted any mention of mobility or ambulatory issues. And while occasionally, Plaintiff presented with an antalgic or abnormal gait, examinations generally revealed only mild pain, tenderness, or swelling. As such, the ALJ's decision on this basis was supported by substantial evidence.

      2.      Listing 12.03, 12.04, 12.06, 12.08 and 14.09 D[5]

---

[5]These Listings involve schizophrenia spectrum and other psychotic disorders (Listing 12.03); depressive, bipolar and related disorders (Listing 12.04); anxiety and obsessive-compulsive disorders (Listing 12.06); and personality and impulse-control disorders (Listing 12.08). *See* 20 C.F.R. Pt. 404, Subpt P, App. 1 §§ 12.03, 12.04, 12.06, and 12.08.

Plaintiff objects to the ALJ's findings regarding Plaintiff's failure to meet or equal a listing, either singly or in combination, with his other impairments for mental impairment(s) and fibromyalgia. Plaintiff specifically objects to: (1) the ALJ's failure to provide a legitimate basis for the rejection of Dr. Jones' findings and opinions; and (2) the ALJ's findings regarding Ms. Helen Ward and Mr. Charles Grissett (third party statements/testimony). These contentions are without merit.

*Dr. Jones' findings/opinions*

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Brito v. Comm'r, Soc. Sec. Admin.,* 687 F. App'x 801, 803 (11th Cir. 2017) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including, but not limited to, the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

A treating doctor's opinion generally is entitled to more weight, and an ALJ must give good reasons for discounting a treating doctor's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Winschel*, 631 F.3d at 1179. However, an ALJ may discount a doctor's opinion,

including a treating doctor's opinion, when the opinion is conclusory, the doctor fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Crawford*, 363 F.3d at 1159-60. Moreover, although doctors' opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC.

*See* 20 C.F.R.§§ 404.1512(b)(2), 404.1513(b)(6), 404.1527(d)(2),404.1545(a)(3), 404.1546(c), 416.912(b)(2), 416.913(b)(6), 416.927(d)(2), 416.945(a)(3), 416.946(c); SSR 96-5p, 1996 WL 374183 (S.S.A.); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012).[6]

Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Winschel,* 631 F.3d at 1179 (11th Cir. 2011). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Grantham v. Acting Comm'r of the Soc. Sec. Admin.,* 654 F. App'x 1015, 1016 (11th Cir. 2016) (citing *Phillips v. Barnhart*, 357 F.3d at 1240-41). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Hantzis v. Comm'r of Soc. Sec.,* 686 F. App'x 634, 635 (11th Cir. 2017) (citation omitted).

---

[6]Opinions on some issues, such as the claimant's RFC, "are not medical opinions, . . .but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d); *see* SSR 96-5p; *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877-78 (11th Cir. 2013) (noting the Commissioner, not a claimant's physician, is responsible for determining whether a claimant is statutorily disabled.). Opinions on issues reserved to the Commissioner, even from a treating doctor, are not entitled to controlling weight or special significance. *See Titles II & Xvi: Med. Source Opinions on Issues Reserved to the Comm'r,* SSR 96-5P (S.S.A. July 2, 1996). "Giving controlling weight to such opinions . . . would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Id.*

Here, the opinion of Dr. Jones regarding Plaintiff being "totally disabled" was entitled to no weight as it was an opinion on an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1)-(3), 416.927(d)(1)-(3); *see Denomme*, 518 F. App'x 875, 877-78 (11th Cir. 2013) ("the Commissioner, not a claimant's physician, is responsible for determining whether a claimant is statutorily disabled.). Additionally, as Dr. Jones only examined Plaintiff on one occasion, his opinion was not entitled to any deference or significant weight. *Denomme*, 518 F. App'x at 877 ("The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician.") (citation omitted); *Crawford*, 363 F.3d at 1160 (concluding that the ALJ correctly found that, because the medical practitioner examined the plaintiff on only one occasion, the medical practitioner's opinion was not entitled to great weight) (citation omitted). The ALJ specifically stated: "Dr. Jones fails to reconcile his observations and thoughts with the suggestions of malingering and manipulation mentioned on more than one occasion within the file. Dr. Jones also over relies on the claimant's reports, including a report from the claimant that he was spending all day in his van for the past year (which belies the fact that the claimant has left his van to attend various medical appointments)." Tr. 537. Further, the ALJ noted, the record did not reflect that Plaintiff experienced four or more episodes of decompensation of extended duration. *Id.* Indeed, the ALJ appropriately relied upon Plaintiff's lack of credibility in discounting the opinion of Dr. Jones, which relied heavily upon Plaintiff's subjective complaints. The ALJ, therefore, properly considered the opinion of Dr. Jones and correctly afforded the opinion little weight. Substantial evidence supports the ALJ's decision.

*Creditability of third party witnesses*

Next, Plaintiff contends that the ALJ's findings regarding Ms. Helen Ward and Mr. Charles Grissett (third party statements/testimony) constitute reversible error. As the Magistrate Judge

correctly noted, the ALJ properly discounted this evidence because by thoroughly explaining the basis for rejecting Plaintiff's subjective complaints, which the statements of Ms. Ward and Mr. Grissett echoed, the ALJ implicitly rejected the statements of Ms. Ward and Mr. Grissett. In fact, the ALJ concluded that these statements did not match the evidence as a whole and therefore found that the statements carried little weight (Tr. 541). "Even if the ALJ fails to make an explicit credibility determination as to a family member's testimony or statements, however, we will not find error if the credibility determination was implicit in the rejection of the claimant's testimony." *Osborn v. Barnhart*, 194 F. App'x 654, 666 (11th Cir. 2006). And indeed, the ALJ's specific and explicit credibility determination as to Plaintiff's statements and subjective complaints sufficiently implied rejection of Ms. Ward's and Mr. Grissett's statements describing the same sorts of complaints and limitations. Tr. 536. Plaintiff's objections are overruled.

     D.      RFC\Evaluation of Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ erred by improperly evaluating Plaintiff's RFC. Plaintiff asserts that, in determining Plaintiff's RFC, the ALJ improperly determined the *effect* Plaintiff's constant fatigue and drowsiness has on the Plaintiff's ability to work instead of the VE. This objection lacks merit. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all of the other evidence of record and will consider all of the medically determinable impairments, including impairments that are not severe,

and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e)(emphasis added); *see Jamison*, 814 F.2d at 588 (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). Thus, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996), 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3), 416.929(c)(3)(i)-(vii), 416.945(a)(3) (emphasis added).

Plaintiff's objection in this regard is without merit because it is the ALJ's province to determine the RFC and not the VE. Moreover, as the Magistrate Judge correctly noted, the ALJ's decision reflects that she specifically considered Plaintiff's claims of drowsiness and related symptoms, albeit in a discussion of medication side effects, but the distinction is irrelevant. (Tr. 539). Indeed, the ALJ noted that she accounted for such limitations by limiting Plaintiff's RFC to avoiding concentrated exposure to hazards, such as moving mechanical parts of equipment, tools, and machinery; avoiding concentrated exposure to open, unprotected heights; and carrying out and remembering simple tasks with minimal changes in the work setting, with no assembly-line pace. (Tr. 539). Plaintiff's objection is overruled.

Next, Plaintiff contends that the ALJ improperly determined the effect of a slow antalgic gait, requiring utilization of a cane, on a claimant ability to sustain the performance of light work. Plaintiff's objection is meritless. The ALJ properly considered and accounted for any limitations stemming from Plaintiff's lower extremity impairments by considering all of the evidence of record, including Plaintiff's subjective complaints, examination findings from Plaintiff's medical sources, the opinions from medical sources, and Plaintiff's inconsistent statements throughout the record (Tr. 533-41). Indeed, the ALJ limited Plaintiff to only occasionally climbing ladders, ropes, scaffolds, ramps, and stairs; only occasionally stooping, kneeling, crouching, and crawling; never being able to balance on slippery, uneven, or moving surfaces; and avoiding concentrated exposure to open, unprotected heights (Tr. 533-34).

Although Plaintiff asserts that the ALJ improperly found that he did not require a cane, this is not the case. Indeed, the ALJ acknowledged that the Plaintiff received a prescription for a single-prong cane from Dr. Nottingham in February 2010 (Tr. 415, 538). However, as the ALJ noted, the evidence of record suggests the cane may have been prescribed due to overreliance on Plaintiff's statements, which the ALJ found less than credible, rather than due to an actual need for such a device (Tr. 538). For example, in May 2010, Dr. Nottingham observed Plaintiff's knee did "not look bad" and had great range of motion and only minimal swelling (Tr. 420). In June 2010, Dr. Steinbronn noted only minimal degeneration and crepitus in the knees, with 5/5 strength (Tr. 429). In 2012, Plaintiff admitted he had been doing more lifting while caring for a terminally ill friend (Tr. 1034). While the evidence supports that Plaintiff has limitations due to his lower extremity condition, he failed to show limitations greater than those identified in the RFC assessment (Tr. 533-34, 538). This objection is overruled.

Next, Plaintiff contends that the ALJ failed to satisfy her burden at Step Five, by identifying evidence which supports her determination that Plaintiff retains the RFC to stand/walk six hours out of eight. This contention is also without merit. Indeed, Dr. Appenfeldt opined that Plaintiff maintained the ability to sit, stand, walk, handle objects, hear and speak, operate a motor vehicle, and feed, bathe, dress, and groom himself as well as the ability to perform simple, repetitive tasks, unskilled work, and work-related mental activities involving understanding, memory, and adaptation (Tr. 1,032). Moreover, the ALJ employed a VE who testified at the hearing. (Tr. 642) The ALJ asked the VE to assume plaintiff was a "younger person," with a high school education, who "could perform light work; occasionally climb ramps, stairs, ladders, ropes and scaffolds; occasionally stoop, kneel, crouch and crawl; must avoid concentrated exposure to hazards such as moving mechanical parts of equipment, tools, and/or machinery or concentrated exposure to open, unprotected heights; retains the ability to understand, carry out, and remember simple tasks with minimal changes in the work setting; cannot perform work involving an "assembly-line pace;" could "occasionally" interact with the general public and supervisors; could "never balance on slippery, uneven or moving surfaces; and must maintain a position for 30 minutes or more before requiring the flexibility to stand or shift positions for a minute or two," while continuing to work. (Tr. 642-45) In response to that hypothetical, the VE stated plaintiff could perform work as a bagger- DOT 920.687-018, SVP-1; marker– DOT 209.587-034, SVP-2; final inspector- DOT 727.687-054; and burr grinder-DOT 673.686-014. (Tr. 643-46). Indeed, the record evidence shows that Plaintiff was capable of working while shifting positions every 30 minutes. Tr. 538. As such, this contention is also overruled.

Plaintiff's next objection involves the ALJ's credibility finding as it relates to fibromyalgia symptoms and the ALJ's alleged failure to include these symptoms in the hypothetical she

propounded to the VE. Again, Plaintiff's contentions are without merit. As already discussed, *supra*, "credibility determinations are the province of the ALJ,…and [the Court] will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). The ALJ's thorough decision reflects that, in setting forth the RFC assessment, the ALJ considered Plaintiff's fibromyalgia and accounted for all credible limitation resulting from his impairments. (Tr. 536-539). Therefore, the ALJ's decision was supported by substantial evidence.

Plaintiff's next objection pertains to the Magistrate Judge's limited discussion of Plaintiff's upper extremities impairments and symptoms to a May 2010 report and a June 2014 report. The Magistrate Judge highlighted these two reports while citing to a number of other reports. *See* Doc. 31 p. 28. As such, this objection is overruled.

Plaintiff next objects because the ALJ did not pose the limitations set forth by the state agency physician to the VE. This contention is without merit. Contrary to Plaintiff's argument, the ALJ properly considered the opinions of the State agency consultants in assessing his RFC (Tr. 324-40, 404, 540, 694-701, 731-39). The Court agrees with the Magistrate Judge that the opinions of the state agency medical consultants consistently indicate Plaintiff experienced no episodes of decompensation of extended duration and mild to moderate limitations in activities of daily living, social functioning, and concentration, persistence, or pace. *See* Doc. 31 pp. 37-40, Jt Memo. 25-27, 29-30. In determining Plaintiff's RFC, the ALJ considered these opinions to the extent that the opinions were consistent with the other evidence of record. In fact, the ALJ properly afforded the opinions great weight and correctly incorporated the appropriate limitations into the RFC finding. As the record reflects, the ALJ limited Plaintiff to understanding, carrying out, and remembering simple tasks with minimal changes in the work setting; indicated that Plaintiff could not perform

work that involved an assembly line pace; and indicated that Plaintiff could only occasionally interact with the general public and supervisors (Tr. 533-34). Plaintiff's objection is overruled.

E.     Medical Opinions

Dr. Nottingham

Plaintiff contends that the ALJ erred in discounting Dr. Nottingham's opinion. This contention is without merit. With respect to the opinion of Dr. Nottingham, the ALJ considered the opinion and afforded it little weight, noting that, to a great extent, Dr. Nottingham's opinion related to a legal conclusion reserved to the Commissioner, namely whether Plaintiff was disabled, and, further, such opinion did not account for the credibility factors and inconsistencies in the record (Tr. 410, 412, 539-40). In August and September 2010, Dr. Nottingham noted that Plaintiff had been seen on multiple occasions during the prior two years for a variety of arthritic complaints, including complaints as to his lumbar spine, thoracic spine, and cervical spine (Tr. 410, 412). Dr. Nottingham noted that Plaintiff's diagnosis was possible fibromyalgia and osteoarthritis and that his workup for rheumatoid arthritis, gout, and systemic lupus erythematosus was negative (Tr. 410). According to Dr. Nottingham, Plaintiff took muscle relaxants, narcotics, and anti-inflammatory medication to control his pain, which had been very successful and seemed to keep the pain under control, but that physical therapy had not relieved his pain in any substantial manner (Tr. 410, 412). Dr. Nottingham stated that Plaintiff consistently complained of pain with almost any kind of activity, despite repeated findings of no swelling, no discoloration, good pulses, and good range of motion (Tr. 410).

Dr. Nottingham remarked that Plaintiff seemed to be fairly well limited in his ability to function and his complaints of pain were consistent every time he was seen even though such complaints as to pain were "very subjective" in their presentation (Tr. 410). Notwithstanding, Dr.

Nottingham opined that, despite physical therapy and medication, Plaintiff continued "to be disabled because of the pain involved in ordinary activities" (Tr. 410). However, Dr. Nottingham admittedly based his assessment upon Plaintiff's subjective complaints of pain, despite the lack of objective findings upon examination by Dr. Nottingham to support Plaintiff's complaints (Tr. 410)

Here, the ALJ properly considered the opinion in light of the other evidence of record, including several noted inconsistencies, and the fact that Dr. Nottingham provided an opinion on an issue reserved to the Commissioner. Statements by a medical source that a claimant is "disabled" or "unable to work" constitute opinions on issues reserved to the Commissioner and do not direct that a finding of "disabled" is warranted. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877-78 (11th Cir. 2013) (stating that it is the Commissioner, not a claimant's physician, who determines whether a claimant is statutorily disabled, and a statement by a medical source that a claimant is disabled does not mean that the Commissioner will conclude a claimant is disabled). Moreover, the Commissioner need not afford any special significance to the source of such an opinion because the determination of disability and the ability to work remain issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1)-(3), 416.927(d)(1)-(3). As such, the ALJ properly afforded little weight to Dr. Nottingham's opinion that Plaintiff was disabled. Given the ALJ's finding that Plaintiff's subjective complaints were not entirely credible, she established good cause for not affording Dr. Nottingham's opinion significant weight as the opinion concerned an issue reserved to the Commissioner and was not bolstered by the evidence and, in fact, was inconsistent with Dr. Nottingham's own findings. This objection is overruled.

Next, Plaintiff contends that Dr. Jones' opinion should have been given more weight. The Court has already discussed this contention. s*upra.*

F.        Step Five

Plaintiff's contention in regard to Step Five is that the VE testimony cannot satisfy the Commissioner's burden on this step. Here, Plaintiff attempts to re-argue every objection already addressed so the Court will disregard the VE's testimony. At Step Five, the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Phillips*, 357 F.3d at 1239; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work, a finding of not disabled is warranted. *Phillips*, 357 F.3d at 1239. Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted. *Id.* At this step, the burden temporarily shifts to the Commissioner to show that other jobs exist in the national economy which, given the claimant's impairments, the claimant can perform. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (citation omitted); *see Foote*, 67 F.3d at 1559.

"The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227 (citation omitted). There are two avenues by which an ALJ may determine a claimant's ability to adjust to other work in the national economy; namely, by applying the Medical Vocational Guidelines ("grids") and by the use of a VE. *Phillips*, 357 F.3d at 1239-40. Typically, where the claimant cannot perform a full range of work at a given level of exertion or where the claimant has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating the claimant can perform other jobs is through the testimony of a VE. *Jones*, 190 F.3d at 1229. When the ALJ utilizes the testimony of a VE, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments for a VE's testimony to

constitute substantial evidence. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (citation omitted); *Wilson*, 284 F.3d at 1227 (citations omitted); *Jones*, 190 F.3d at 1229 (citation omitted) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."). When the ALJ properly rejects purported impairments or limitations, however, the ALJ need not include those findings in the hypothetical posed to the VE. *Crawford*, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported").

Plaintiff contends that the ALJ articulated no legitimate reasons for excluding plaintiff's upper and lower extremity impairments; need to use a cane, chronic fatigue and/or the limitation identified by the state agency physicians, in the hypothetical she relied on at Step Five. As this Court has already noted, the VE must consider only those impairments which the ALJ found severe enough to consider. *Crawford*, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported"). Plaintiff failed to meet the listing for his alleged impairments as was his burden. Moreover, Plaintiff's need to use a cane, chronic fatigue and/or the limitation identified by the state agency physicians were all considered by the ALJ's findings and limitations were properly posed to the VE. Any objections made by Plaintiff to the R&R which were not addressed in this Order have been determined to be without merit.

In sum, the ALJ's thorough and well-reasoned decision is supported by substantial evidence and the correct legal standards were applied. The Commissioner's decision is due to be affirmed.

### III.     CONCLUSION

After careful consideration of the Report and Recommendation of the Magistrate Judge, in conjunction with an independent examination of the file, the Court is of the opinion that the Magistrate Judge's Report and Recommendation should be adopted, confirmed, and approved in all respects.  Accordingly, it is hereby **ORDERED and ADJUDGED**:

1.     Plaintiff Jack T. Gregory's Objections are **OVERRULED**.

2.     The Report and Recommendation of the Magistrate Judge (Doc. 31) is **adopted, confirmed, and approved** in all respects and is made a part of this Order for all purposes, including appellate review.

3.     The decision of the Commissioner of Social Security is **AFFIRMED**.

4.     The Clerk is directed to terminate all pending motions and deadlines, enter judgment accordingly, and **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida on September 30, 2017.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any